IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN MILLER<br><br>Plaintiff,<br><br>v.<br><br>READING POLICE DEPARTMENT, *et al.*,<br><br>Defendant. | CIVIL ACTION<br>NO. 18-5178 |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS**                                                                                         JUNE 13, 2019

      Defendant Detective Joseph Snell[1] moves for judgment on the pleadings arguing, as a matter of law, probable cause existed to arrest Plaintiff Kevin Miller for criminal homicide and possession of an instrument of crime. Det. Snell also argues he is protected by the doctrine of qualified immunity as no constitutional right was violated. Mr. Miller, however, contends Det. Snell's Motion is premature as the record is not yet fully developed. Mr. Miller also requests leave to amend the complaint at this early stage. We agree. For the reasons that follow, Det. Snell's Motion for Judgment on the Pleadings (ECF Docket No. 12) is GRANTED without prejudice and Mr. Miller is given leave to amend the complaint within 30 days from the date of this Opinion.

**I.**     **PLEADED FACTS**

      Plaintiff Kevin Miller worked as a security guard at the Italian Garden Bar in Reading, Pennsylvania. (ECF Docket No. 1, ¶ 7.) Before his employment with the Italian Garden Bar, Mr. Miller served in the Marines and specialized in Infantry and Infantry Security—which

---

[1] During the May 3, 2019, Oral Argument, Mr. Miller stated on the record that the claims against Reading Police Department should be dismissed without prejudice. This Court will enter an appropriate Order dismissing the claims against Reading Police Department without prejudice.

included small arms training.  (Id. at ¶¶ 8-9.)  David Frankhouser—a non-party to the suit with alleged ties to the "Crip" gang and KKK—was a regular patron of the Italian Garden Bar and regularly had issues with security.  (Id. at ¶¶ 10-12.)

On June 4, 2016, Mr. Frankhouser approached Mr. Miller after the Italian Garden Bar had closed and stated that he "had a knife, and a gun, and that he was going to kill Miller."  (Id. at ¶ 14.)  During the confrontation—captured on security footage from a nearby local business—Mr. Miller drew his weapon while backing away from Mr. Frankhouser.  (Id. at ¶¶ 15-17.)  After continuing to back away from Mr. Frankhouser, Mr. Miller pointed his weapon at Mr. Frankhouser.  (Id. at ¶ 17.)  Mr. Frankhouser paused for a moment and then continued to approach Mr. Miller, forcing Mr. Miller to fire his weapon at Mr. Frankhouser and shooting him in the torso.  (Id. at ¶¶ 20-21.)  Mr. Frankhouser fell to the ground and Mr. Miller immediately contacted police and EMS.  (Id. at ¶¶ 21-22.)  Although Mr. Frankhouser arrived at Reading Hospital in relatively stable condition, Mr. Frankhouser eventually died 12 hours later.  (Id. at ¶ 24.)

Following the altercation, Mr. Miller was detained and questioned by Det. Snell for three hours.  (Id. at ¶ 25.)  Det. Snell released Mr. Miller.  (Id. at ¶ 26.)  Following the review and approval of the Berks County Assistant District Attorney and the Magisterial District Judge's review of the affidavit of probable cause, a warrant was issued for Mr. Miller's arrest. (ECF Docket No. 6, ¶ 26.)  Mr. Miller was arrested and on June 4, 2016, Mr. Miller was charged with criminal homicide and possession of an instrument of a crime.  (Id. at ¶¶ 26-27.)  After a jury trial, Mr. Miller was acquitted of the charges filed against him.  (Id. at ¶ 28.)  Now Mr. Miller brings claims of malicious prosecution and violation of due process under the Fourth and Fourteenth Amendments.  (Id.; ECF Docket No. 1, at ¶¶ 29-40.)

## II. STANDARD OF REVIEW

Motions for judgment on the pleadings under Rule 12(c) are reviewed under the same standard as motions to dismiss under Rule 12(b)(6). *Sykes v. Glaxo-SmithKline*, 484 F.Supp.2d 289, 296 (E.D. Pa. 2007) (citing *Piskanin v. Hammer*, 2005 WL 3071760, at *3 (E.D. Pa. Nov. 14, 2005)). "The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings." *Phillips v. Transunion, LLC*, 2012 WL 1439088, at *3 (E.D. Pa. April 25, 2012) (quoting *Sprague v. Neil*, 2007 WL 3085604, at *2 (M.D. Pa. Oct. 19, 2007) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.38 (3d ed. 2004))). But our Court of Appeals has consistently stated "that the distinction between the two standards is 'merely semantic.'" *Sprague v. Neil*, 2007 WL 3085604, at *2 (M.D. Pa. Oct. 19, 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010). And so, the pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. *Phillips*, 2012 WL 1439088, at *4.

Importantly, "[i]n evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

### III.  ANALYSIS

Under 42 U.S.C. § 1983, Mr. Miller must establish that a state actor engaged in conduct depriving him of "rights, privileges, or immunities" secured by the constitution or laws of the United States. Mr. Miller contends he was arrested without probable cause in violation of his Fourth Amendment right to be free from unreasonable seizure and alleges malicious prosecution following his acquittal. Malicious prosecution under 42 U.S.C. § 1983 requires plaintiff establish five elements:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Det. Snell contends Mr. Miller's malicious prosecution claim fails because the proceeding against Mr. Miller was initiated with probable cause and an arrest based on probable cause cannot "become the source of a claim for false imprisonment." (ECF Docket No. 12, at 3.) And given the existence of probable cause Det. Snell argues he is entitled to qualified immunity. We address probable cause and qualified immunity below.

   A. <u>Probable Cause</u>

The Fourth Amendment precludes police officers from arresting citizens without probable cause. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972). Probable cause requires more than mere suspicion but does not require the officer have evidence "sufficient to prove guilt beyond a reasonable doubt." *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984). Probable cause exists whenever "reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

As malicious prosecution hinges on probable cause, the constitutional question turns on whether "'a reasonable officer could have believed that probable cause existed' to arrest" the plaintiff at that time. *Id.* (citing *Blaylock v. City of Philadelphia*, 504 F.3d 405, 411 (3d Cir. 2007)). When an arrest is made on a valid warrant, like this case, the probable cause analysis depends on whether the officers "knowingly and deliberately, or with a reckless disregard for the

truth, made false statements or omissions that create[d] a falsehood in applying for a warrant." *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). And so two elements are present: 1) "whether 'the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,'"; and 2) "whether those assertions or omissions were 'material, or necessary, to the finding of probable cause.'" *Id.* But as our Court of Appeals explained, reckless disregard for the truth "means different things when dealing with omissions and assertions." *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000).

To determine whether an assertion (or statement) is made with reckless disregard for purposes of a warrant, "the affiant must have entertained serious doubts as to the truth of [their] statements or had obvious reasons to doubt the accuracy of the information [they] reported." *Id.* at 698. (citing *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Clapp*, 46 F.3d 795, 801 n. 6 (8th Cir. 1995))). As misleading assertions can involve "minor details," the focus is on the evidence demonstrating the affiant willingly and "affirmatively distorted the truth," *not* the relevance of the information. *Wilson*, 212 F.3d at 788 (emphasis added). But, omissions are made with reckless disregard where "an officer withholds a fact in his ken that '[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'" *Andrews*, 853 F.3d at 698 (*Wilson*, 212 F.3d at 788) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993) (concluding the officer acted with reckless disregard by telling the magistrate that a drug sniffing dog showed "interest" in the defendant's bag, but failed to inform the magistrate that the dog had not gone into "alert."). To determine the materiality of assertions or omissions made with reckless disregard for the truth, "[courts] excise

6

the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause."[2]

In *Andrews*, our Court of Appeals concluded the affiant made several false or misleading assertions in an affidavit for an arrest warrant. *Id.* at 703. Specifically, the court determined: 1) the affiant omitted from his affidavit the fact that the victim reported only a partial license plate the day of the incident which a "reasonable person would know that a judge would want to see this in a probable cause affidavit"; 2) the affiant made a number of false or misleading affirmative assertions, such as the affiant's description of the perpetrator which more closely aligned with the perpetrator's driver's license photo instead of the victim's less detailed description of the perpetrator; 3) the affiant had "obvious reason[s]" to doubt the victim's claim that she spotted the "same vehicle" the day after the incident given the victim reported a partial license plate the day before which differed from the defendant's license plate; and 4) the affiant failed to report that the affiant was aware that the defendant's car differed from the car the victim described the previous day. *Id.* at 698-99. Our Court of Appeals determined these misrepresentations, standing alone, would not be material to the determination of probable cause; but the court also stated, "there may be instances when no single omission or misrepresentation is sufficient to defeat a finding of probable cause, but the combined effect of the omissions and misrepresentations suffices to call into question the reliability of the affiant and the affiant's witnesses such that the question of probable cause cannot be resolved on a summary judgment motion." *Id.* at 703 n.16. As a result, the court concluded the reconstructed affidavit showed substantial evidence of the witness' own unreliability outweighing the positive identification, leaving the question to be resolved by the fact finder. *Id.* at 705.

---

[2] A "corrected warrant" is a warrant application as it would have been, had it been amended to cure an affiant's omissions and misstatements. *Wilson v. Russo*, 212 F.3d 781, 795 (3d Cir. 2000) (Pollak, District Judge, concurring in part and dissenting in part).

In *Wilson*, our Court of Appeals determined the affiant's omissions and assertions were not material to probable cause as no reasonable jury could find facts that the "corrected warrant" lacked probable cause. *Wilson*, 212 F.3d at 792. Specifically, the defendant alleged the affiant made specific omissions in the warrant application:

> (1) he did not tell the judge that although Officer Lipp's investigative report stated that the robber was between 6'3" and 6'5", [the defendant's] driver's abstract indicated that he was 5'11"; (2) he did not tell the judge that [a witness] did not pick [the defendant] out of an array; (3) he did not tell the judge that in the photo array, [the defendant] looked ethnically different from the others; and (4) he did not mention that height and weight were not indicated on the photo array.

*Id.* at 788. Applying the above standard, the court explained the difference in height and failure to identify the defendant were "the kind of thing[s] the judge would wish to know"; but the ethnicity of the victim would only make it more prejudicial and not be something the officer should be expected to communicate, and the lack of height and weight in the photo array was so routine it would be unremarkable to a judge. *Id.* While the above omissions may be used for impeachment of the affiant, "a police officer cannot be expected to present a judge with complete background." *Id.*

Mr. Miller alleges Det. Snell arrested him without probable cause in violation of his Fourth and Fourteenth Amendment rights. While it is acknowledged Det. Snell arrested Mr. Miller pursuant to a warrant, Mr. Miller claims the warrant lacked sufficient probable cause. As we are only allowed to review the complaint, answer, and written instruments attached to those pleadings under Federal Rule of Civil Procedure 12(c), Mr. Miller is required to provide evidence Det. Snell recklessly disregarded the truth in his warrant application, and that a warrant application based on what Det. Snell should have told the judge (or district attorney) would have lacked probable cause. As Mr. Miller argues, "an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d

781, 786 (3d Cir. 2000). But Mr. Miller merely pleads "Defendants caused [him] to suffer malicious prosecution by their wrongful conduct," and "fail[ed] to properly investigate the conduct giving rise to his imprisonment and then subjecting [him] to Defendants' wrongful conduct." (ECF Docket No. 1, at ¶¶ 32-33.) Also, Mr. Miller avers "Defendants did not have probable cause nor any cause to deny Plaintiff bail, and to maintain his imprisonment for 18 months" and that he "had not committed any infraction giving rise to the probable cause/reasonable suspicion and/or to legally justify keeping [him] in prison without bail." (Id. at ¶¶ 35, 37.)

Given the identity of pleading standards between judgments on the pleadings and motions to dismiss—except for the court's ability to review the answer and instruments attached to the pleadings—it is clear that Mr. Miller fails to plead a plausible right to relief for malicious prosecution.[3] Mr. Miller alleges Det. Snell lacked probable cause but his complaint merely provides conclusory statements and fails to contain sufficient allegations of ultimate facts to sustain his claim. As there is a dispute as to the sufficiency of probable cause to arrest in this case and our inability to examine documents outside the complaint and answer, we conclude Mr. Miller's present complaint fails to plead a plausible right to relief for malicious prosecution without further well pleaded facts. But given our concern with the allegations and the circumstances surrounding this case, Mr. Miller is granted leave to amend the complaint within 30 days from the date of this Opinion.

---

[3] While Mr. Miller presents new specific allegations of Det. Snell's affirmative false statements and omissions in Mr. Miller's response to Det. Snell's Motion for Judgment on the Pleadings, under Federal Rule of Civil Procedure 12(d) we are unable to consider matters outside the pleadings without treating Det. Snell's motion as one for summary judgment. As converting Det. Snell's motion to one for summary judgment is inappropriate at this stage, we cannot consider Mr. Miller's response to Det. Snell's Motion for Judgment on the Pleadings.

B. Qualified Immunity

Detective Snell argues qualified immunity bars damages recovery because his arrest of Mr. Miller did not violate Mr. Miller's federal right given the existence of probable cause, and that is was not clearly established that filing charges against a person—with the approval of the District Attorney and through a signed warrant by the Magisterial District Court—is constitutionally impermissible. (ECF Docket No. 12, at 5.) Mr. Miller argues qualified immunity does not apply because Det. Snell violated his constitutional rights, and "the right to be free from arrest except on probable cause" was clearly established when Mr. Miller prepared the affidavit. *Andrews*, 853 F.3d at 705.

Qualified immunity shields government officials from liability for civil damages "to the extent that their conduct did not violate clearly-established constitutional rights of which a reasonable official would have known." *Benedict v. Borough of Malvern*, 2016 WL 3059540, at *3 (E.D. Pa. May 31, 2016) (citing *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)). The Supreme Court "stress[es] the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). We use our discretion to decide which qualified immunity prong to address first "in light of the circumstances in the particular case at hand." *Id.* at 236. As our Court of Appeals concluded, the right to be free from arrest and prosecution, without probable cause, is a clearly established right that would violate a plaintiff's constitutional right. *Andrews*, 853 F.3d at 705 (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). But this does not end our inquiry. The Supreme Court recognizes that it is inevitable police officers could mistakenly conclude probable cause exists to make an arrest, and where officers act in ways they reasonably believe to be lawful, the officers will not be held personally

liable. *Orsatti*, 71 F.3d at 483. Specifically, under this objective reasonableness standard, "only where the warrant application is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' will the officer lose the shield of immunity." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

While it is important to resolve the issue of qualified immunity at the earliest stage in litigation, "courts examining qualified immunity at the pleading stage usually conclude it unwise because in most cases it is necessary to develop a factual record first." *Benedict*, 2016 WL 3059540, at *3 (citing *Newland v. Reehorst*, 328 Fed.Appx. 788, 791 n.3 (3d Cir. 2009) (non-precedential)); *see also Mitchell v. Township of Willingboro*, 913 F. Supp. 2d 62, 67 (D.N.J. 2012) (quoting *Newland* for this proposition and rejecting a qualified immunity defense at the Rule 12(b)(6) stage). Given our probable cause analysis above, the fact that we are dismissing the present complaint, and because the factual record is insufficiently developed, we decline to address Det. Snell's qualified immunity arguments in this Opinion but will allow him to raise them at a later time if necessary.

## IV. CONCLUSION

In the accompanying order, this Court grants Defendant Detective Snell's Motion for Judgment on the Pleadings. While Mr. Miller fails to plead a plausible right to relief for malicious prosecution regarding probable cause based on a valid warrant, we grant Mr. Miller leave to amend his complaint. Also, given the factual record is insufficiently developed, we will not address Det. Snell's qualified immunity arguments here but will allow him to raise them at a later time. Mr. Miller may amend his complaint within 30 days from the date of this Opinion in accordance with this Opinion.