IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN MILLER,<br><br>                Plaintiff,<br><br>v.<br><br>JOSEPH SNELL,<br><br>                Defendant. | CIVIL ACTION<br>NO. 18-5178 |

**MEMORANDUM OPINION**

**SCHMEHL, J. /s/ JLS**                                                                                           **December 30, 2020**

      After being found not guilty of criminal homicide and possession of an instrument of crime, Kevin Miller brings one count of malicious prosecution against defendant detective Joseph Snell. Plaintiff alleges that the defendant failed to include all of the material facts of the underlying incident in his affidavit for plaintiff's arrest warrant. Plaintiff's theory is that had defendant included more of the facts, then the Magistrate Judge would not have found probable cause, and therefore, plaintiff would not have been arrested, prosecuted, and gone to prison for eighteen months.

      I find that the defendant is entitled to judgment on the pleadings because even if the affidavit included all of the material facts that may have been omitted, any Magistrate Judge would still find that probable cause existed for plaintiff's arrest. The probable cause finding would not be negated by the omitted material facts because plaintiff shot and killed an unarmed man, and whether the shooting was in self-defense is an issue to be decided in court, not during the arrest warrant application, as it was in the underlying case.

**Pleaded Facts**

Plaintiff Kevin Miller worked as a security guard at the Italian Garden Bar in Reading, Pennsylvania. (ECF #29, Amended Complaint, ¶ 7.) Defendant Joseph Snell worked as a detective at the Reading Police Department. (*Id.* ¶ 5.) David Frankhouser, Jr., is a non-party to this suit who allegedly had ties to a local gang, was a regular patron of the Italian Garden Bar who regularly had issues with security, and is the victim of the shooting. (*Id.* ¶ 8-10.)

On June 4, 2016, at approximately 4 a.m., plaintiff walked a female patron of the Italian Garden Bar to her residence. (*Id.* ¶ 11.) As plaintiff was walking back to the Italian Garden Bar, a man yelled out behind him to "hold up." (*Id.* ¶ 12-13.) When the man caught up with plaintiff, plaintiff identified the man as David Frankhouser, Jr., the significant other of the female patron that plaintiff had just walked home. (*Id.* ¶ 14-15.) Frankhouser was furious, and told plaintiff that he had a knife, gun, and was going to kill him. (*Id.* ¶ 16.)

Plaintiff continuously backed away as Frankhouser threatened and approached him. (*Id.* ¶ 17-18.) As he was backing away, plaintiff withdrew his handgun that he was permitted to carry and aimed it at Frankhouser. (*Id.* ¶ 18.) Frankhouser momentarily paused, but began approaching again. (*Id.* ¶ 19.) Plaintiff was still backing away after he withdrew his handgun, but when Frankhouser was approximately three feet away from plaintiff's handgun plaintiff pulled the trigger. (*Id.* ¶ 21-24.) The bullet struck Frankhouser in the lower torso, and he died from his injuries at the hospital. (*Id.* ¶ 28.)

After the shooting, plaintiff called 911 and remained on the scene until police arrived. (*Id.* ¶ 25-26.) The police questioned plaintiff for approximately three hours until the defendant released him. (*Id.* ¶ 27.) Two nearby security cameras captured the incident on video but did not

capture audio, and as described in his affidavit, defendant interviewed a witness about the confrontation. (*Id.* ¶ 29.) Based upon defendant's questioning of plaintiff, the video footage, and the witness, the defendant and an Assistant District Attorney filed an arrest warrant application for plaintiff's arrest for criminal homicide and possession of an instrument of crime. (*See* ECF #29, Ex.A.)

The main part of the arrest warrant application is defendant's affidavit. The affidavit seeks to explain what happened during the incident, and the reasons that support probable cause for plaintiff's arrest. The Magistrate Judge found probable cause for plaintiff's arrest and issued the arrest warrant. Defendant's affidavit is as follows:

### AFFIDAVIT OF PROBABLE CAUSE

On 6/4/16 at 0421 hours Officer Danny Voorhies of the Reading Police Department, Berks County, PA responded to the area of 10th and Penn Streets, Reading, Berks County, PA for a male that was shot. Upon arrival Officer Danny Voorhies found the victim who was later identified as David Frankhouser Jr. hunched over on the south side of the 900 blk of Penn Street. The male who David Frankhouser Jr. was standing nearby with his handgun drawn. The shooter was ordered to drop the gun and he complied. He was later identified as Kevin Miller. David Frankhouser Jr. was transported to the Reading Hospital and Trauma Center where he was taken to the operating room. Two handguns were retrieved from Kevin Miller.

On 6/4/16 at 0530 hours this Investigator spoke with Witness#1. Witness#1 stated that he saw Kevin Miller with David Frankhouser Jr. in the 900 blk of Penn Street. He asked Kevin Miller if he was alright and Kevin Miller responded "hold up". Kevin Miller then drew his weapon and pointed it at a shirtless male. Witness#1 parked his motorcycle across the street and walked over to where Kevin Miller and the shirtless male were. Kevin Miller told the male to back up then Kevin Miller fired a shot at the male. Kevin Miller then told Witness#1 to watch his back. Witnes#1 stated he did not see the shirtless male with any weapons.

On 6/4/16 at 0551 hours this Investigator spoke with Kevin Miller. Upon speaking with Kevin Miller he stated that he walked a female to her residence on Penn Street. When they arrived the female asked him for his phone number due to her apartment door being kicked in. He provided the female with the phone number and walked east on Penn Street. In the 900 blk of Penn Street a

male ran up behind him and told him to hold up. The male, David Frankhouser Jr., then told Kevin Miller that he had a gun and knife and was going to kill him. Kevin Miller stated that David Frankhouser Jr. reached into his pockets several times as if he had a weapon. Kevin Miller told him to stay away from his pockets. Kevin Miller then drew his handgun and pointed it at David Frankhouser Jr. He told David Frankhouser Jr. to stop going into his pockets. David Frankhouser Jr. then dug into his pockets again and Kevin Miller thought he saw a silver object coming out of his pocket. Kevin Miller then fired one shot into David Frankhouser's torso.

On 6/4/16 David Frankhouser Jr. succumbed to his injuries while in surgery at the Reading Hospital.

Video was retrieved from the 900 block of Penn Street. That video was not consistent with the account provided by Kevin Miller, specifically, David Frankhouser Jr. is only seen going into his pockets once. When he does this Kevin Miller points a handgun at David Frankhouser Jr. David Frankhouser Jr. shows his hands and no weapon is present. David Frankhouser Jr. walks towards Kevin Miller and Kevin Miller fires his weapon one time. David Frankhouser Jr. falls to the ground. No weapons were found on the body or clothing of David Frankhouser Jr.

As a result of the above incident and information received through investigation conducted I respectfully request that a warrant be issued for the Defendant Kevin Miller for the above violations of the PA Crimes Code as amended.

(*Id.* at 6.)

Plaintiff argues that this affidavit recklessly omitted material information about the incident that the defendant was aware of. Specifically, plaintiff argues that the following were recklessly omitted:

> (1.) Frankhouser (the deceased) initiated the confrontation;
> (2.) Frankhouser approached plaintiff in an aggressive and threatening manner;
> (3.) Plaintiff made reasonable efforts to retreat from the confrontation;
> (4.) Plaintiff put his hands up and attempted to diffuse the confrontation;
> (5.) Plaintiff retreated, taking over twenty steps backwards, while Frankhouser aggressively pursued;
> (6.) Plaintiff retreated for approximately twenty-eight seconds prior to pulling his firearm;
> (7.) Plaintiff's retreat, after pulling his handgun, continued for approximately five seconds before plaintiff discharged his handgun;

      (8.)    Despite seeing the handgun, Frankhouser continued to aggressively pursue plaintiff;
      (9.)    Plaintiff shot Frankhouser at a very close range; such that, Frankhouser would have had a reasonable opportunity to disarm plaintiff and turn the gun on plaintiff, had plaintiff waited any longer; and
      (10.)   After the shooting, plaintiff called 911 to the scene.

(ECF #29, ¶ 53-54.) Therefore, plaintiff avers that if the affidavit included this information, then the Magistrate would not have found probable cause, and he would not have gone through a criminal proceeding that resulted in him being found not guilty and he would not have had to spend eighteen months in prison. (*Id.* ¶ 53-59.)

Presently, the defendant motions for judgment on the pleadings. Defendant argues that the affidavit does not lack probable cause because the alleged omitted facts are actually included in the affidavit, and to the extent that any facts were not included, the inclusion of those facts does not negate probable cause. Lastly, defendant argues he is entitled to qualified immunity.[1]

## Standard of Review

Motions for judgment on the pleadings under Rule 12(c) are reviewed under the same standard as motions to dismiss under Rule 12(b)(6). *Sykes v. Glaxo-SmithKline*, 484 F.Supp.2d 289, 296 (E.D. Pa. 2007) (citing *Piskanin v. Hammer*, 2005 WL 3071760, at *3 (E.D. Pa. Nov. 14, 2005)). "The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings." *Phillips v. Transunion, LLC*, 2012 WL 1439088, at *3 (E.D. Pa. April 25, 2012) (quoting *Sprague v. Neil*, 2007 WL 3085604, at *2 (M.D. Pa. Oct. 19, 2007) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.38 (3d ed. 2004))). But

---

[1] Given my decision, I need not address defendant's qualified immunity argument. Nevertheless, *Andrews v. Scuilli*, 853 F.3d 690, 705 (3d Cir. 2017) instructs that qualified immunity would be improper under these circumstances.

our Court of Appeals has consistently stated "that the distinction between the two standards is 'merely semantic.'" *See Sprague*, 2007 WL 3085604, at *2.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679). And so, the pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. *Phillips*, 2012 WL 1439088, at *4.

Importantly, "[i]n evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or

6

integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## **Analysis**

For plaintiff to succeed on his malicious prosecution claim he must be able to prove the following five elements: (1) defendant began a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) defendant acted maliciously or for a purpose other than bringing the defendant to justice; and (5) plaintiff suffered a deprivation of a liberty. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). On defendant's motion for judgment on the pleadings, he takes issue with the third element—that the criminal proceeding was initiated without probable cause.

The Fourth Amendment precludes police officers from arresting citizens without probable cause. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972). Probable cause requires more than mere suspicion but does not require the officer have evidence "sufficient to prove guilt beyond a reasonable doubt." *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984). Probable cause exists whenever "reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

A two-prong test is used when an arrest is based on a valid arrest warrant and the arrestee challenges the probable cause determination. *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017). First, the court determines "whether the officer, with at least reckless disregard for the

truth, made false statements or omissions that created a falsehood in applying for a warrant." *Id.* Second, "whether those assertions or omissions were material, or necessary, to the finding of probable cause." *Id.* (citations omitted).

1. <u>Whether defendant recklessly omitted material facts from his affidavit.</u>

A police officer recklessly omits a fact from an affidavit when the fact is something "that any reasonable person would have known that [] was the kind of thing the judge would wish to know." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 470 (3d Cir. 2016). Within this inquiry are two issues: first, whether the officer had knowledge of the allegedly withheld information, and second, whether the information is relevant to the existence of probable cause. *Id.* at 471.

Plaintiff alleges that ten material facts were recklessly omitted from the affidavit:

> (1.) Frankhouser (the deceased) initiated the confrontation;
> (2.) Frankhouser approached plaintiff in an aggressive and threatening manner;
> (3.) Plaintiff made reasonable efforts to retreat from the confrontation;
> (4.) Plaintiff put his hands up and attempted to diffuse the confrontation;
> (5.) Plaintiff retreated, taking over twenty steps backwards, while Frankhouser aggressively pursued;
> (6.) Plaintiff retreated for approximately twenty-eight seconds prior to pulling his firearm;
> (7.) Plaintiff's retreat, after pulling his handgun, continued for approximately five seconds before plaintiff discharged his handgun;
> (8.) Despite seeing the handgun, Frankhouser continued to aggressively pursue plaintiff;
> (9.) Plaintiff shot Frankhouser at a very close range; such that, Frankhouser would have had a reasonable opportunity to disarm plaintiff and turn the gun on plaintiff, had plaintiff waited any longer; and
> (10.) After the shooting, plaintiff called 911 to the scene.

(ECF # 29, ¶ 53-54.) Plaintiff argues that had these facts been included in defendant's affidavit, "a court would *not* have issued a warrant for plaintiff's arrest." (*Id.* at ¶ 57.)

However, many of these alleged recklessly omitted facts are included in the affidavit. The affidavit includes: (1) that Frankhouser initiated the confrontation, (2) that Frankhouser approached plaintiff aggressively; and (8) that Frankhouser continued to pursue after plaintiff

8

withdrew his handgun. The affidavit states that plaintiff told the police that Frankhouser "ran up behind him and told him to hold up," Frankhouser did so aggressively since he said that "he had a gun and knife and was going to kill him," and Frankhouser "walk[ed] towards [plaintiff]" after plaintiff withdrew his gun.

It follows that the affidavit does not include the following facts that plaintiff alleges were recklessly omitted:

(1.) Plaintiff made reasonable efforts to retreat from the confrontation;
(2.) Plaintiff put his hands up and attempted to diffuse the confrontation;
(3.) Plaintiff retreated, taking over twenty steps backwards, while Frankhouser aggressively pursued;
(4.) Plaintiff retreated for approximately twenty-eight seconds prior to pulling his firearm;
(5.) Plaintiff's retreat, after pulling his handgun, continued for approximately five seconds before plaintiff discharged his handgun;
(6.) Plaintiff shot Frankhouser at a very close range; such that, Frankhouser would have had a reasonable opportunity to disarm plaintiff and turn the gun on plaintiff, had plaintiff waited any longer; and
(7.) After the shooting, plaintiff called 911 to the scene.

Some of these alleged omissions are not reasonably expected to be included in the affidavit, and the omissions that are expected to be included should not necessarily be conveyed in the manner that plaintiff wishes. *See Dempsey*, 535 F.3d at 470, 471, FN10. The facts that plaintiff took "twenty steps backwards," for "twenty-eight seconds," he continued to retreat for "five seconds before discharge[ing] his handgun," and that the shooting was at a "very close range, such that, Frankhouser would have had a reasonable opportunity to disarm plaintiff" are facts that should not be required to be in the affidavit, or should not be characterized in the way plaintiff asks. I must add that plaintiff is doing a lot of personal editorializing with his statement of the facts.

Communicating the exact number of steps and seconds in plaintiff's retreat to the Magistrate is not something that any reasonable person would believe that a judge would want or

9

need to know in that exact manner. Instead, a clear statement that plaintiff was retreating throughout the incident is something that a judge would want to know. The alleged omission that the shooting occurred within a "very close range" is implied in the facts that the two men were on the same street, in a confrontation, and Frankhouser continued to approach plaintiff after plaintiff withdrew his gun. Requiring the defendant to communicate to the Magistrate Judge that Frankhouser could have disarmed plaintiff if plaintiff did not shoot him would improperly require the officer to give an opinion on plaintiff's self-defense argument.

Thus, plaintiff's alleged reckless omissions are boiled down to the following three averments that any reasonable person would expect that a judge would want to know:

(1.) Plaintiff was the person who contacted 911 after the shooting;
(2.) From the time Frankhouser initiated the confrontation, plaintiff was backing away from Frankhouser the entire time; and
(3.) Plaintiff continued to back away even after he withdrew his handgun and pointed it at Frankhouser.

Defendant was aware of these facts when he submitted the affidavit. He spoke with plaintiff, reviewed the video camera footage (that did not record audio), and interviewed a witness. Those facts are relevant as a Magistrate Judge would want to know during an arrest warrant application for criminal homicide that the suspect was retreating during the incident, and that the suspect called 911 after the shooting.

Therefore, I find that the above three factual statements were omitted from the affidavit, and I will now reconstruct the affidavit to determine whether probable cause is negated by the inclusion of these facts.

2. <u>Whether the reconstructed affidavit negates probable cause.</u>

Having determined that the affidavit should have included the facts that plaintiff was retreating throughout the confrontation, he even retreated after withdrawing his handgun, and he

was the person who called 911 after the shooting, I must determine whether the finding of probable cause is negated by these facts. In doing so, the determinative question is "whether a reasonable jury could not find a lack of probable cause [], i.e., that the evidence gives rise to a fair probability that [plaintiff] committed the crimes alleged." *Dempsey*, 834 F.3d at 479 (citations omitted).

The Third Circuit has recently decided many cases on reconstructing affidavits, and the most analogous to the present case are *Andrews* and *Dempsey*. In *Andrews*, the defendant-police officer recklessly omitted the following facts in his affidavit for a child luring arrest warrant: (1) the victim only reported a partial license plate the day of the incident; (2) the victim reported a red four-door vehicle the day of the incident, but then reported that she saw the suspect's car as a red three-door coupe the next day, and (3) the officer changed the victim's description of the suspect based upon the suspect's driver's license photo. *Andrews*, 853 F.3d at 695-99, 703. The Third Circuit held that it was for the jury to decide whether the reconstructed affidavit with the above information still provided probable cause. *Id.* at 705; *see also Tereo v. Smuck*, 2018 WL 4404676, *6-10 (Sept. 17, 2018 M.D. Pa.)

In *Dempsey*, the plaintiff, a male college student, was charged with various crimes concerning a physical altercation with a female student. 834 F.3d at 477. In the affidavit for plaintiff's arrest warrant the police painted a picture where Dempsey was the sole aggressor, and that little playfulness or joking occurred during the students' "wrestling" incident. *Id.* at 476-77. But the police investigation actually revealed that the students had been playful before the incident, that the female student was the aggressor at certain times, that the students were laughing at various times during the incident, and the students were alone for ten minutes. *Id.* at 475. The Third Circuit affirmed the District Court's order granting summary judgment because

11

the above omitted information did not "undermine the existence of probable cause," nor was it "material to the determination that there was a 'fair probability' that a crime occurred." *Id.* at 480-81; *see also Tarr v. City of Pittsburgh*, 2019 WL 967802, at *9-12 (Feb. 28, 2019 W.D. Pa.)

Here, the original affidavit is as follows:

### AFFIDAVIT OF PROBABLE CAUSE

On 6/4/16 at 0421 hours Officer Danny Voorhies of the Reading Police Department, Berks County, PA responded to the area of 10th and Penn Streets, Reading, Berks County, PA for a male that was shot. Upon arrival Officer Danny Voorhies found the victim who was later identified as David Frankhouser Jr. hunched over on the south side of the 900 blk of Penn Street. The male who David Frankhouser Jr. was standing nearby with his handgun drawn. The shooter was ordered to drop the gun and he complied. He was later identified as Kevin Miller. David Frankhouser Jr. was transported to the Reading Hospital and Trauma Center where he was taken to the operating room. Two handguns were retrieved from Kevin Miller.

On 6/4/16 at 0530 hours this Investigator spoke with Witness#1. Witness#1 stated that he saw Kevin Miller with David Frankhouser Jr. in the 900 blk of Penn Street. He asked Kevin Miller if he was alright and Kevin Miller responded "hold up". Kevin Miller then drew his weapon and pointed it at a shirtless male. Witness#1 parked his motorcycle across the street and walked over to where Kevin Miller and the shirtless male were. Kevin Miller told the male to back up then Kevin Miller fired a shot at the male. Kevin Miller then told Witness#1 to watch his back. Witnes#1 stated he did not see the shirtless male with any weapons.

On 6/4/16 at 0551 hours this Investigator spoke with Kevin Miller. Upon speaking with Kevin Miller he stated that he walked a female to her residence on Penn Street. When they arrived the female asked him for his phone number due to her apartment door being kicked in. He provided the female with the phone number and walked east on Penn Street. In the 900 blk of Penn Street a male ran up behind him and told him to hold up. The male, David Frankhouser Jr., then told Kevin Miller that he had a gun and knife and was going to kill him. Kevin Miller stated that David Frankhouser Jr. reached into his pockets several times as if he had a weapon. Kevin Miller told him to stay away from his pockets. Kevin Miller then drew his handgun and pointed it at David Frankhouser Jr. He told David Frankhouser Jr. to stop going into his pockets. David Frankhouser Jr. then dug into his pockets again and Kevin Miller thought he saw a silver object coming out of his pocket. Kevin Miller then fired one shot into David Frankhouser's torso.

On 6/4/16 David Frankhouser Jr. succumbed to his injuries while in surgery at the Reading Hospital.

Video was retrieved from the 900 block of Penn Street. That video was not consistent with the account provided by Kevin Miller, specifically, David Frankhouser Jr. is only seen going into his pockets once. When he does this Kevin Miller points a handgun at David Frankhouser Jr. David Frankhouser Jr. shows his hands and no weapon is present. David Frankhouser Jr. walks towards Kevin Miller and Kevin Miller fires his weapon one time. David Frankhouser Jr. falls to the ground. No weapons were found on the body or clothing of David Frankhouser Jr.

As a result of the above incident and information received through investigation conducted I respectfully request that a warrant be issued for the Defendant Kevin Miller for the above violations of the PA Crimes Code as amended.

(ECF #29, Ex.A, at 6, Affidavit of Probable Cause.)

A reasonable inclusion of the recklessly omitted facts provides the following reconstructed affidavit:

**AFFIDAVIT OF PROBABLE CAUSE**

On 6/4/16 at 0421 hours Officer Danny Voorhies of the Reading Police Department, Berks County, PA responded to the area of 10th and Penn Streets, Reading, Berks County, PA for a male that was shot. Upon arrival Officer Danny Voorhies found the victim who was later identified as David Frankhouser Jr. hunched over on the south side of the 900 blk of Penn Street. The male who David Frankhouser Jr. was standing nearby with his handgun drawn. The shooter was ordered to drop the gun and he complied. He was later identified as Kevin Miller. **Kevin Miller is the person who contacted 911 after the shooting.** David Frankhouser Jr. was transported to the Reading Hospital and Trauma Center where he was taken to the operating room. Two handguns were retrieved from Kevin Miller.

On 6/4/16 at 0530 hours this Investigator spoke with Witness#1. Witness#1 stated that he saw Kevin Miller with David Frankhouser Jr. in the 900 blk of Penn Street. He asked Kevin Miller if he was alright and Kevin Miller responded "hold up". Kevin Miller then drew his weapon and pointed it at a shirtless male. Witness#1 parked his motorcycle across the street and walked over to where Kevin Miller and the shirtless male were. Kevin Miller told the male to back up then Kevin Miller fired a shot at the male. Kevin Miller then told Witness#1 to watch his back. Witnes#1 stated he did not see the shirtless male with any weapons.

13

>       On 6/4/16 at 0551 hours this Investigator spoke with Kevin Miller. Upon speaking with Kevin Miller he stated that he walked a female to her residence on Penn Street. When they arrived the female asked him for his phone number due to her apartment door being kicked in. He provided the female with the phone number and walked east on Penn Street. In the 900 blk of Penn Street a male ran up behind him and told him to hold up. The male, David Frankhouser Jr., then told Kevin Miller that he had a gun and knife and was going to kill him. Kevin Miller stated that David Frankhouser Jr. reached into his pockets several times as if he had a weapon. Kevin Miller told him to stay away from his pockets. Kevin Miller then drew his handgun and pointed it at David Frankhouser Jr. He told David Frankhouser Jr. to stop going into his pockets. David Frankhouser Jr. then dug into his pockets again and Kevin Miller thought he saw a silver object coming out of his pocket. Kevin Miller then fired one shot into David Frankhouser's torso.
>
>       On 6/4/16 David Frankhouser Jr. succumbed to his injuries while in surgery at the Reading Hospital.
>
>       Video was retrieved from the 900 block of Penn Street. That video was not consistent with the account provided by Kevin Miller, specifically, David Frankhouser Jr. is only seen going into his pockets once. When he does this Kevin Miller points a handgun at David Frankhouser Jr. David Frankhouser Jr. shows his hands and no weapon is present. David Frankhouser Jr. walks towards Kevin Miller and Kevin Miller fires his weapon one time. David Frankhouser Jr. falls to the ground. No weapons were found on the body or clothing of David Frankhouser Jr. **The video footage shows that from the time David Frankhouser Jr. initiated the confrontation by telling Kevin Miller to "hold up," Kevin Miller was backing away from David Frankhouser Jr. throughout the confrontation. Kevin Miller was still backing away after he withdrew his weapon and pointed it at David Frankhouser Jr. David Frankhouser Jr. continued walking towards Kevin Miller up until the time he was shot by Kevin Miller.**
>
>       As a result of the above incident and information received through investigation conducted I respectfully request that a warrant be issued for the Defendant Kevin Miller for the above violations of the PA Crimes Code as amended.

With a recognition of the omitted facts, a review of the reconstructed affidavit, and a comparison of the two affidavits, I find that a neutral and detached Magistrate Judge would still find probable cause for the primary crime of criminal homicide for plaintiff's arrest. *See Dempsey*, 834 F.3d at 479.

14

The facts in the reconstructed affidavit that would stand out and support probable cause to any reviewing Magistrate Judge are that an unarmed man was shot and killed after he approached the shooter and told him that he had a knife, gun, and was going to kill him. Whether the shooting was in self-defense is certainly an issue, however, it is not necessarily the Magistrate's duty to make an arguable self-defense determination when issuing an arrest warrant. *Compare Gorman v. Bail*, 947 F.Supp.2d 509, 523 (E.D. Pa. 2013) ("self-defense is not the type of affirmative defense that officers must consider or disclose in affidavits of probable cause . . . . self-defense is inherently an issue that must be decided at trial, not by a police officer or a judge at a hearing to issue an arrest warrant."), *with Berrios v. City of Philadelphia*, 96 F.Supp.3d 523, 532-33 (E.D. Pa. 2015) ("unlike the *Gorman* Court, this Court does not find that the affirmative defense of self-defense can never be a consideration in the determination of probable cause.").

I do believe a Magistrate should be presented self-defense evidence if such evidence is relevant to whether there is a reasonable possibility that the suspect committed the crimes the affiant attests to. However, when the self-defense issue is arguable, with mixed questions of law and fact, then the issue should be left to be decided in court, or by a jury, rather than during the arrest warrant application. It appears that this is exactly what happened in the underlying case, and I find that it still would have happened if the defendant had included the omitted facts in his affidavit.

The omissions in this case are more like the omissions in *Dempsey* that the Third Circuit found to not negate probable cause rather than *Andrews*. In *Andrews*, the omitted information concerned poor identification evidence from the victim, and the police officer, in essence, filling in the gaps and errors in the victim's testimony by making the suspect's description similar to his driver's license. 853 F.3d at 703. In *Dempsey*, the officer omitted exonerating information such

as the suspect not being the sole aggressor, the two college students were playful before the incident, and the students appeared to be playful during the incident. 834 F.3d at 475-77.

Here, what is omitted from defendant's affidavit is that the plaintiff called 911 after the shooting, and that plaintiff was backing away throughout the confrontation. I agree with plaintiff that the Magistrate Judge should have been made aware of this information. But, even if the Magistrate was aware of those facts, probable cause would still have been found and an arrest warrant still issued because an unarmed man was shot and killed, and whether the killing was in self-defense was an issue for the court or a jury to decide.

While understandably aggrieved for going through a criminal trial and spending eighteen months in prison only to be found not guilty, the plaintiff's aggrievances regarding the defendant's affidavit are unsupported by the law. Accordingly, I find that any Magistrate Judge would still find probable cause for plaintiff's arrest even if the affidavit included the omitted material information.[2]

## **Conclusion**

For these reasons, defendant's motion for judgment on the pleadings is granted, and the case is dismissed. An Order follows.

---

[2] Plaintiff argues that any probable cause determination at this judgment on the pleadings stage is premature because the record is not fully developed, and probable cause determinations must be based on the totality of the circumstances. Plaintiff's arguments amount to the proposition that any malicious prosecution claim or probable cause determination can not be dealt with on a motion to dismiss or on a motion for judgment on the pleadings. That is incorrect. Plaintiff's Amended Complaint and the attached arrest warrant application includes all of plaintiff's allegations and corresponding information that is needed to determine whether the plaintiff could prove that the affidavit recklessly omitted information, and whether the inclusion of that information negates the probable cause determination.